UNITED STATES DISTRICT COURT
DISTRICT OF IDAHO

| | |
|---|---|
| JASON VANORDEN,<br><br>       Plaintiff,<br><br>vs.<br><br>BANNOCK COUNTY, SHERIFF'S DEPARTMENT, CITY OF POCATELLO, SHERIFF LOREN NIELSEN, CAPTAIN KEVIN FONNSEBECK, CAPTAIN ELLE PETERSON, DEPUTY SHANNON BLOXHAM, DEPUTY IFEREIMI TABAKECE, DEPUTY SHELTON, DEPUTY JARROD PHILLIPS, DEPUTY HOFF, DETECTIVE ALEX HAMILTON, DEPUTY KATHLEEN BALLARD, SCOTT MARCHAND, SERGEANT ERICK ANDERSON, OFFICER MATT SHUTES, SERGEANT BILL COLLINS, OFFICER TRAVIS EVANS, OFFICER DARREN DANIELS, AND JOHN DOES 1-20,<br><br>       Defendants. | Case No.: 4:14-cv-00303-REB<br><br>**MEMORANDUM DECISION AND ORDER RE:**<br><br>**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**<br><br>**(Docket No. 32)**<br><br>**DEFENDANTS' MOTION TO COMPEL DISCOVERY RESPONSES**<br><br>**(Docket No. 43)** |

Now pending before the Court are (1) Defendants'[1] Motion for Summary Judgment (Docket No. 32), and (2) Defendants' Motion to Compel Discovery Responses (Docket No. 43). Having carefully considered the record and participated in oral argument,[2] the undersigned enters the following Memorandum Decision and Order:

---

[1] Moving Defendants include the City of Pocatello, Scott Marchand, Erick Anderson, Matt Shutes, Bill Collins, Travis Evans, and Derek Daniels. Defendants refer to these Defendants as the "City of Pocatello Defendants" in their briefing. *See* Mem. in Supp. of MSJ, p. 2 (Docket No. 32, Att. 1).

[2] The Court heard oral argument on Defendants' Motion for Summary Judgment on June 24, 2015. Defendants' Motion to Compel Discovery Responses was filed after this oral argument. This Memorandum Decision and Order addresses both Motions.

**MEMORANDUM DECISION AND ORDER - 1**

## I. BACKGROUND

A.    Factual Background

On August 15, 2013, officers from the City of Pocatello Police Department were dispatched to make an arrest on Jason Van Orden[3] for an alleged domestic battery. *See* Am. Compl., ¶ 8 (Docket No. 4); *see also* Defs.' SOF Nos. 1-3 (Docket No. 32, Att. 2). After what can best be described as a stand-off, Mr. Van Orden was arrested and transported to Portneuf Medical Center for medical treatment before being booked in the Bannock County Jail. *See* Defs.' SOF Nos. 3-8 (Docket No. 32, Att. 2). According to the City of Pocatello Defendants, Mr. Van Orden "was cleared by medical doctors to be able to be booked into jail." *See id*. at SOF No. 10 ("There were no red flags raised by his medical doctors that Mr. Van Orden might be suicidal. The City of Pocatello Police Department was not given any reason that would prevent Mr. Van Orden from being transported to jail."). Ultimately, Mr. Van Orden was charged with domestic battery, resisting and obstructing, and battery of a police officer and was delivered to the Bannock County Jail for booking. *See id*. at SOF No. 11. The City of Pocatello Defendants claim that, once delivered to the Bannock County Jail, Mr. Van Orden was no longer under the custody or control of the City of Pocatello Police Department (and, by logical extension, the City of Pocatello Defendants). *See id.* at SOF Nos. 11, 16.

---

    [3] There is some confusion as to who "Plaintiff" is in this matter. For example, this action's caption identifies Plaintiff as, simply, Jason Van Orden. *See generally* Am. Compl. (Docket No. 4). Yet, the Amended Complaint itself begins by stating: "Plaintiff, JASON VANORDEN by and through personal representatives of the estate and parents of the deceased GARTH VANORDEN AND JULIE VANORDEN ("Plaintiffs"), by and through the personal representatives of his estate and undersigned counsel, hereby alleges and complains as follows:" *See id*. at pp. 1-2 (capitalization in original). And, as to the "jurisdiction" allegations, the Amended Complaint states: "*Plaintiffs'* son, Jason Van Orden, at the time of the incident, was a citizen of the State of Idaho [ ]." *See id*. at p. 2 (emphasis added).

**MEMORANDUM DECISION AND ORDER - 2**

On August 29, 2013, deputies at the Bannock County Jail found Mr. Van Orden dead in his cell – he had apparently taken his own life by hanging himself with bed linens. *See* Am. Compl., ¶¶ 9-12 (Docket No. 4). At the time of his death, Mr. Van Orden was not on suicide watch. *See id.* at ¶ 12.

B.  Procedural Background

Plaintiff appears to raise claims against not only the City of Pocatello Defendants, but *all* the state participants connected to the period leading up to Mr. Van Orden's death (including those from Bannock County). For example, some of the all-encompassing allegations include:

> Eventually all named Defendants were called to the scene wherein the use of excessive force by law enforcement was used in the arrest of the Plaintiff resulting in intentional infliction of emotional distress, negligence upon the Plaintiff. That this neglect supervision, abuse also contributed to the wrongful death of Plaintiff.
>
> . . . .
>
> Because Defendant's knew or should have known that Plaintiff was emotionally and mentally unstable and suicidal, Defendants owed a duty to Plaintiff to provide appropriate care to prevent Plaintiff from harming himself. Indeed, Defendants claim they had taken precaution however despite these claims Plaintiff accomplished his suicide unchecked and without detection by Defendants
>
> . . . .
>
> Because Defendant's action at the time of the arrest and incarceration or lack of action pursuant to the clear warnings of Plaintiffs instability, Plaintiff was denied his constitutional right to life without due process of law, a protection afforded him by the Constitution of the United States.

*Id.* at ¶¶ 8, 13-14. In turn, Plaintiff's two stated causes of action – (1) "Count 1: Violation of 42 U.S.C. § 1983: Refusing or Neglecting to Prevent Harm" and (2) "Count [2]: Gross Negligence" – allege in relevant part:

> [As to Count 1]
>
> At all times relevant to this Complaint, Defendants and employees were employed to monitor and provide protection for Plaintiff and were under the direction and

**MEMORANDUM DECISION AND ORDER - 3**

control of Defendants, Sheriff Loren Nielsen and the County of Bannock, State of Idaho and City of Pocatello Police Department. (Herein referred to Defendants and employees).

Acting under color of law and pursuant to official policy or custom, Defendants and employees, knowingly, recklessly, or with gross negligence, failed to instruct, provide information to, supervise, control, and discipline, on a continuing basis, employees in order to prevent the type of harm and damages suffered by Plaintiff and otherwise prevent the deprivation of Plaintiff's constitutional and statutory rights, privileges, and immunities.

Defendants and employees had knowledge or, had they diligently exercised their duties to instruct, inform, provide information to, supervise, control, and discipline on a continuing basis their subordinates, should have had knowledge that would have given them the power to prevent or aid in the prevention of the harms and damages suffered by Plaintiff, and/or could have done so by reasonable diligence; but, instead, knowingly, recklessly, or with gross negligence, failed or refused to do so resulting in the excessive force in the arrest and death of Plaintiff.

Defendants and employees directly or indirectly, under color of law, approved or ratified the unlawful, deliberate, malicious, reckless, grossly negligent, or wanton conduct of themselves and their subordinates as heretofore described

As a result of their failure to act according to the warnings, Defendants and employees denied Plaintiff his right to life without due process of law and his right to equal protection under the law, thus impeding the due course of justice, in violation of the Fourth, Fifth, Ninth, and Fourteenth Amendments of the Constitution of the United States and 42 U.S.C. 1983.

. . . .

[As to Count 2]

Defendants and employees owed a duty directly to Plaintiff, and/or indirectly through the supervision and training of their subordinates, to take steps to prevent events such as occurred here, to wit. Indeed, this duty existed despite the warning signs. The Defendant's and employees owe a duty to all those being arrested and as inmates residing at the Bannock County Jail to prevent the type of harm sustained by Plaintiff.

Defendants and employees owed a duty to act according to the standard of ordinary care, to wit, to respond and act according to the facts of the case, to provide Plaintiff proper arrest and with a safe environment, the failure of which was the proximate cause of Plaintiff's harm and damages.

Defendants and employees breached that duty by failing to act as ordinary and reasonable persons in their capacity would act, to wit, by failing to perform their

**MEMORANDUM DECISION AND ORDER - 4**

duties and by failing to adequately train, control, and supervise their subordinates and failing to act on the warnings facts and all signs of distraught of Plaintiffs.

As a result of those breaches, which were the proximate causes of Plaintiff's harms and damages, Plaintiff suffered harm and damages of his arrest, including his death.

*Id*. at ¶¶ 16-20, 22-25.

The City of Pocatello Defendants now move for summary judgment, arguing (1) that Plaintiff (whether it is somehow the decedent or his parents) does not have standing to pursue either of the above-referenced claims, and (2) regardless, that there is no genuine issue of material fact for trial on the claims as alleged against them specifically. *See generally* Mem. in Supp. of MSJ (Docket No. 32, Att. 1).[4]

## II.  DISCUSSION

A.  **Defendants' Motion for Summary Judgment (Docket No. 32)**

 1.  Summary Judgment Standard

Summary judgment is appropriate where a party can show that, as to any claim or defense, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  One of the principal purposes of summary

---

[4] Plaintiff did not timely file a response to Defendants' Motion for Summary Judgment, instead filing an after-the-fact Motion for Additional Time to Respond to Defendants' Motion for Summary Judgment (Docket No. 34), along with later-in-time responses to Defendants' Motion for Summary Judgment (under seal as directed by the Court) (Docket Nos. 37, 39).  On May 11, 2015, the Court denied Plaintiff's Motion for Additional Time to Respond to Defendants' Motion for Summary Judgment.  *See* 5/11/15 MDO, p. 6 (Docket No. 40) ("This is a hard line, to be sure.  But tasked with supervising the pretrial phase of litigation, findings of excusable neglect should be reserved for extraordinary cases presented by unique or extraordinary circumstances.  Simply put, the record does not appear to support such a finding here.  Plaintiff's Motion for Additional Time to Respond to Defendants' Motion for Summary Judgment (Docket No. 34) is DENIED.") (capitalization in original).  Accordingly, Plaintiff's responses to Defendants' Motion for Summary Judgment remain under seal and have not been reviewed by the Court.  *See id*. at p.2, n.1.

**MEMORANDUM DECISION AND ORDER - 5**

judgment "is to isolate and dispose of factually unsupported claims . . . ." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-34 (1986). It is "not a disfavored procedural shortcut," but is instead the "principal tool[ ] by which factually insufficient claims or defenses [can] be isolated and prevented from going to trial with the attendant unwarranted consumption of public and private resources." *Id*. at 327. "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). There must be a genuine dispute as to any *material* fact – a fact "that may affect the outcome of the case." *Id*. at 248.

The evidence must be viewed in the light most favorable to the non-moving party, and the Court must not make credibility findings. *Id*. at 255. Direct testimony of the non-movant must be believed, however implausible. *Leslie v. Grupo ICA*, 198 F.3d 1152, 1159 (9th Cir. 1999). On the other hand, the Court is not required to adopt unreasonable inferences from circumstantial evidence. *See McLaughlin v. Liu*, 849 F.2d 1205, 1208 (9th Cir. 1988).

The moving party bears the initial burden of demonstrating the absence of a genuine dispute as to a material fact. *See Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) (en banc). To carry this burden, the moving party need not introduce any affirmative evidence (such as affidavits or deposition excerpts) but may simply point out the absence of evidence to support the nonmoving party's case. *See Fairbank v. Wunderman Cato Johnson*, 212 F.3d 528, 532 (9th Cir. 2000).

This shifts the burden to the non-moving party to produce evidence sufficient to support a jury verdict in his favor. *See Devereaux*, 263 F.3d at 1076. The non-moving party must go beyond the pleadings and show "by her [ ] affidavits, or by the depositions, answers to

**MEMORANDUM DECISION AND ORDER - 6**

interrogatories, or admissions on file" that a genuine dispute of material fact exists. *Celotex*, 477 U.S. at 324.[5]

      2.     <u>The City of Pocatello Defendants Are Entitled to Summary Judgment</u>

Plaintiff's Amended Complaint is not the best example of a well-pleaded complaint. *See* Fed. R. Civ. P. 8(a)(2) & (d)(1) ("A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." and "Each allegation must be simple, concise, and direct."). Instead, it reflects a hodge-podge of factual allegations and legal conclusions relating, on the one hand, to Mr. Van Orden's arrest on August 15, 2013, and, on the other hand, Mr. Van Orden's death two weeks later on August 29, 2013. The Court discerns, nonetheless, that Plaintiff appears to assert claims corresponding with each of these instances – a Section 1983 excessive force claim associated with Mr. Van Orden's arrest, and a Section 1983 failure to protect claim associated with Mr. Van Orden's death while

---

[5] The fact that Plaintiff's Motion for Additional Time to Respond to Defendants' Motion for Summary Judgment was denied (*see supra*) does not mean, *ipso facto*, that Defendants' Motion for Summary Judgment should be granted outright. In this respect, Local Civil Rule 7.1(e)(2) provides:

> In motions brought under Federal Rule of Civil Procedure 56, if the non-moving party fails to timely file any response documents required to be filed, such failure shall not be deemed a consent to the granting of said motion by the court. However, if a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Federal Rule of Civil Procedure 56(c) or Local Rule 7.1(b)(1) or (c)(2), the court nonetheless may consider the uncontested material facts as undisputed for purposes of consideration of the motion, and the Court may grant summary judgment if the motion and supporting materials – including the facts considered undisputed – show that the moving party is entitled to the granting of the motion.

Dist. Idaho Loc. Civ. R. 7.1(e)(2). It was with this in mind that the Court nonetheless set a hearing on Defendants' Motion for Summary Judgment.

**MEMORANDUM DECISION AND ORDER - 7**

jailed at the Bannock County Jail.[6] Unclear, however, are the exact contours of these claims vis à vis the City of Pocatello Defendants. This Memorandum Decision and Order therefore addresses both such claims, concluding that the City of Pocatello Defendants are entitled to summary judgment in each instance.[7]

     *a.*  *Section 1983 and Excessive Force*

Section 1983 provides a remedy for persons injured as a result of constitutional violations by persons acting under the color of state law, providing in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. "Section 1983 does not create any substantive rights, but is instead a vehicle by which plaintiffs can bring federal constitutional and statutory challenges to actions by state and local officials." *Anderson v. Warner*, 451 F.3d 1063, 1067 (9th Cir. 2006) (citing *Cholla Ready Mix, Inc. v. Civish*, 382 F.3d 969, 978 (9th Cir. 2004)). "The purpose of § 1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights." *Id.* (citation omitted).

To establish a prima facie case Section 1983, a plaintiff "must adduce proof of two elements: (1) the action occurred 'under color of law' and (2) the action resulted in a deprivation of a constitutional right or a federal statutory right." *Souders v. Lucero*, 196 F.3d 1040, 1043 (9th

---

[6] At oral argument, Plaintiff's counsel confirmed that the gross negligence claim and excessive force claim are one and the same.

[7] Because the Court finds that Plaintiff cannot prevail on the substantive merits of either claim, this Memorandum Decision and Order need not (and therefore does not) address the City of Pocatello Defendants' standing arguments.

**MEMORANDUM DECISION AND ORDER - 8**

Cir. 1999) (quoting *Parratt v. Taylor*, 451 U.S. 527, 535 (1981)). Here it is undisputed that the City of Pocatello Defendants were acting under "color of law" when they engaged with and arrested Mr. Van Orden. The question therefore becomes whether Mr. Van Orden was deprived of constitutional rights during the course of his arrest. As to the City of Pocatello Defendants, Plaintiff alleges that Mr. Van Orden was deprived of the rights protected under the Fourth Amendment during his arrest.

The United States Supreme Court has ruled that where an excessive force claim arises in the context of an arrest or investigatory stop of a free citizen, it is most properly characterized as one invoking the protections of the Fourth Amendment, which "guarantees citizens the right 'to be secure in their persons . . . against unreasonable seizures' of the person." *Graham v. Connor*, 490 U.S. 386, 394 (1989)[8] (citing *Tennessee v. Garner*, 471 U.S. 1, 7 (1985)). Under *Graham*, "*all* claims that law enforcement officers have used excessive force – deadly or not – in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness standard, rather than under a 'substantive due process approach.'" *Id*. at 395 (emphasis in original).

Fourth Amendment jurisprudence has long held that the "right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Id*. (citing *Terry v. Ohio*, 392 U.S. 1, 22-27 (1983)). Although it is not required that police officers use the "least intrusive degree of force possible . . . .," the "force

---

[8] In *Graham*, the United States Supreme Court further explained that the Fourteenth Amendment protects a pretrial detainee from the use of excessive force that amounts to punishment, and, after conviction, the Eighth Amendment "serves as the primary source of substantive protection . . . in cases . . . where the deliberate use of force is challenged as excessive and unjustified.'" *Graham*, 490 U.S. at 395, n.10 (quoting *Whitley v. Albers*, 475 U.S. 312, 327 (1986)).

**MEMORANDUM DECISION AND ORDER - 9**

which [i]s applied must be balanced against the need for that force." *Forrester v. City of San Diego*, 25 F.3d 804, 807 (9th Cir. 1994); *Deorle v. Rutherford*, 272 F.3d 1272, 1279 (9th Cir. 2001); *see also Brooks v. City of Seattle*, 599 F.3d 1018, 1025 (9th Cir. 2010). "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments in circumstances that are tense, uncertain and rapidly evolving about the amount of force that is necessary in a particular situation." *Graham*, 490 U.S. at 396-97. Thus, the "reasonableness of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id*. at 397; *see also Santos v. Gates*, 287 F.3d 846, 853 (9th Cir. 2002) ("'not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers,' violates Fourth Amendment.") (quoting *Johnson v. Glick*, 481 F.2d 1028, 1033 (2nd Cir. 1973)). However, "even where some force is justified, the amount actually used may be excessive." *Santos*, 287 F.3d at 853 (citing *P.B. v. Koch*, 96 F.3d 1298, 1303-04 (9th Cir. 1996)).

Determining whether the force used to effect an arrest was reasonable under the Fourth Amendment requires "a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Graham*, 490 U.S. at 396. The Ninth Circuit employs a three-step analysis to determine whether law enforcement officers used excessive and, therefore, constitutionally unreasonable force. *See Miller v. Clark Cnty.*, 340 F.3d 959 (9th Cir. 2003). "First, we assess the gravity of the particular intrusion on Fourth Amendment interests by evaluating the type and amount of force inflicted." *Id*. at 964. Second, the court assesses "the importance of the government interests at stake" by evaluating the factors set forth by the United States Supreme Court in

**MEMORANDUM DECISION AND ORDER - 10**

*Graham*, which include: (1) the severity of the crime at issue; (2) whether the suspect posed an immediate threat to the safety of the officers or others; and (3) whether the suspect was actively resisting arrest or attempting to evade arrest by flight. *See id.* (citing *Graham*, 490 U.S. at 396). Third, the court must consider the totality of the circumstances and weigh the gravity of the intrusion against the government's interest to determine whether the force employed was constitutionally reasonable. *See Miller*, 340 F.3d at 964; *see also Franklin v. Foxworth*, 31 F.3d 873, 876 (9th Cir. 1994) (stating that "inquiry is not limited to the specific *Graham* factors, . . . [the court] must look to whatever specific factors may be appropriate in a particular case, whether or not listed in *Graham*, and then must consider 'whether the totality of the circumstances justifies a particular sort of seizure.'") (quoting *Graham*, 490 U.S. at 396).

Here, the details surrounding Mr. Van Orden's arrest are found in the various police report narratives (including force response reports) contained in the record. *See, e.g.*, Ex. A to Cartwright Aff. (Docket No. 32, Att. 3); Ex. A to Daniel Aff. (Docket No. 32, Att. 5); Ex. A to Marchand Aff. (Docket No. 32, Atts. 7-10). A summary of the incident (compiled following a review of these reports) is contained within Sergeant Diekemper's August 21, 2013 "Supervisor Investigation," with him stating in relevant part:

> THIS INCIDENT INITIATED ON 081513, AT 0258 HRS, WHEN OFFICERS RESPONDED TO 923 E. WHITMAN FOR A DOMESTIC DISTURBANCE. OFFICER SCHUBERT DEVELOPED P[ROBABLE] C[AUSE] TO ARREST THE SUSPECT, JASON VANORDEN, FOR DOMESTIC BATTERY. VANORDEN HAD BEATEN HIS WIFE TO THE POINT THAT SHE SOUGHT MEDICAL CARE AND HAD VISIBLE INJURIES. VANORDEN HAD SINCE FLED. OFFICER SEARCHED FRO VANORDEN AND OFFICER D. DANIELS LOCATED HIM IN HIS TRUCK AT 10TH AND HAYDEN. VANORDEN WAS ACTING ERRATICALLY, STATED HE HAD A GUN AND REFUSED TO COMPLY WITH DIRECTIONS. OFFICER DANIELS AND NUMEROUS OTHER OFFICERS DISPLAYED FIREARMS AT VANORDEN AS A STAND-OFF ENSUED UNTIL NEARLY 1000 HRS. DURING THE STAND-OFF

**MEMORANDUM DECISION AND ORDER - 11**

> VANORDEN PRODUCED MULTIPLE WEAPONS TO INCLUDE A KNIFE, HAMMER, SAW BLADE AND SCREWDRIVER. VANORDEN REFUSED COMPLY WITH OFFICER AND MADE STATEMENTS INDICATING THAT HE MAY BE SUICIDAL. VANORDEN MAINTAINED THROUGHOUT THAT HE POSSESSED A GUN AND CONTINUED TO KEEP ONE OF HIS HANDS CONCEALED, LEADING OFFICERS TO BELIEVE HE MAY BE ARMED WITH THE GUN. THE I[MMEDIATE] R[ESPONSE] U[NIT] TEAM, TO INCLUDE C[RISIS] N[EGOTIATION] T[EAM], RESPONDED. NEGOTIATIONS CONTINUED IN SOME FORM, PATROL OFFICERS AT THE ONSET AND CNT FOR THE MAJORITY, THROUGHOUT THE STAND-OFF. VANORDEN WAS GIVEN NUMEROUS OPPORTUNITIES TO SURRENDER. A PLAN WAS DEVELOPED BY THE IRU COMMAND STAFF TO CONDUCT A VEHICLE ASSAULT ON VANORDEN. THIS PLAN INCLUDED THE DEPLOYMENT OF LESS LETHAL OPTIONS. THE PLAN WAS INITIATED ON THE DIRECTION OF SGT. BUCK, THE IRU SWAT TEAM LEADER. PURSUANT TO THE PLAN, OFFICER EVANS FIRED TWO LESS LETHAL 12 GAUGE "BEAN BAG" ROUNDS AND STRUCK VANORDEN WHO WAS IN POSSESSION OF A KNIFE AND REFUSING TO SURRENDER. VANORDEN REENTERED HIS TRUCK, STILL POSSESSING THE KNIFE, AS THE ASSAULT TEAMS BREACHED THE DOOR WINDOWS. OFFICER DANIELS CHALLENGED VANORDEN TO COMPLY WHILE DISPLAYING HIS TASER. VANORDEN, WHILE LYING ON THE TRUCK SEAT AND HOLDING THE KNIFE, PULLED HIS FEET BACK AND KICKED OFFICER DANIELS. OFFICER DANIELS SIMULTANEOUSLY DEPLOYED HIS TASER. VANORDEN WAS STRUCK WITH ON TASER PROBE IN THE UPPER LIP, A LIKELY RESULT OF VANORDEN'S BODY POSITION COMBINED WITH HIS KICKING AND STRIKING OFFICER DANIEL'S HANDS. VANORDEN LAID IN THE TRUCK AND PASSIVELY RESISTED. OFFICER WADSWORTH TOOK VANORDEN BY HIS ARMS AND PULLED HIM FROM THE CAB AND ONTO THE GROUND WITHOUT THE NEED FOR HARD HANDED FORCE. VANORDEN WAS HANDCUFFED.

Ex. A to Marchand Aff. (Docket No. 32, Att. 7) (capitalization in original). Plaintiff does not dispute this account of events, but alleges that the description it contains spells out unconstitutional excessive force. The undersigned disagrees.

Under the three-step balancing analysis prescribed by the Ninth Circuit (*see supra*), the police officers' use of two bean bag rounds and a taser probe was unquestionably a substantial use of force – even when recognizing the availability of other, more significant and intrusive levels of force. However, balancing the force itself against the need for that force, the officers

**MEMORANDUM DECISION AND ORDER - 12**

involved here were responding to an aggressive and hostile Mr. Van Orden as he engaged in an armed stand-off with police.[9] In short, Mr. Van Orden's escalation of the conflict (over several hours) gave the police officers the right to commensurately escalate the force necessary to subdue him – especially when considering the potential of grave harm to not only Mr. Van Orden himself, but also the public at large. Therefore, in balancing the force employed against the need for that force, the Court finds as a matter of law that the officers' use of two bean bag rounds and a single taser probe did not constitute excessive force in violation of Section 1983.[10,11]

As a result, Plaintiff's Section 1983 excessive force claim is without merit. The City of Pocatello Defendants' Motion for Summary Judgment is granted in this respect.

---

[9] During oral argument, Plaintiff's counsel portrayed Mr. Van Orden's conduct as consistent with an attempted "suicide by cop." Doing so, however, belies any argument that the police officers' conduct in using non-deadly force was somehow excessive. That is, if, in fact, Mr. Van Orden was actively trying to get the officers to use deadly force upon him (as Plaintiff's counsel intimated during oral argument), the officers' actual use of non-deadly force cuts against any argument that the force ultimately used was excessive. This observation is not dispositive of the issue, but only mentioned to further support the ultimate conclusion reached herein.

[10] Even if the police officers' conduct amounted to excessive force (or if a question of fact existed as to that issue), they may have qualified immunity. *See* Mem. in Supp. of MSJ, pp. 11-14 (Docket No. 32, Att. 1); *see also Saucier v. Katz*, 533 U.S. 194, 206 (2001) (qualified immunity operates "to protect officers from the sometimes hazy border between excessive and acceptable force") (internal quotation marks omitted). This Memorandum Decision and Order makes no finding as to the application of the qualified immunity defense here, as it is not necessary to do so.

[11] Even if the police conduct amounted to excessive force (or if a question of fact existed as to that issue), Plaintiff has failed to establish a violation of policy or custom that could be attributed to the City of Pocatello itself. *See* Mem. in Supp. of MSJ, pp. 7-9 (Docket No. 32, Att. 1) (citing *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 708 (1978) (holding that Section 1983 liability of government employer may not be predicated solely on respondeat superior theory, but must involve action by governmental employer pursuant to some governmental policy). This decision makes no finding as to the application of *Monell* to Plaintiff's Section 1983 excessive force claim against the City of Pocatello.

**MEMORANDUM DECISION AND ORDER - 13**

### b. *Section 1983 and Failure to Protect*

To prevail on a Fourteenth or Eighth Amendment "prison conditions" claim based on failure to prevent harm, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994). When a prison official is deliberately indifferent to a substantial risk of serious harm, his conduct violates the Fourteenth or Eighth Amendment. *See id.* at 828. Deliberate indifference exists when an official is "aware of facts from which the inference could be drawn that a substantial risk of harm exists," and actually draws such an inference. *Id.* at 838.

Here, neither the City of Pocatello, nor the Pocatello Police Department, has any control over the policies, procedures, or operations of the Bannock County Jail. It is Bannock County that owns and operates the Bannock County Jail. *See* Defs.' SOF No. 16 (Docket No. 32, Att. 2). That is to say that, once Mr. Van Orden was delivered to the Bannock County Jail on August 15, 2013, the City of Pocatello Defendants were no longer involved in his custody and care from that point forward. Therefore, the City of Pocatello Defendants were not (or even could have been) deliberately indifferent to a substantial risk of serious harm in the days or moments leading up to Mr. Van Orden's August 29, 2013 death. *See Van Smith v. Franklin*, 286 Fed. Appx. 373, 374-75 (9th Cir. 2008) (upholding summary judgment in favor of defendants on plaintiff's Section 1983 failure to protect claim where defendants "had no official influence over the conditions of [p]laintiff's confinement").

As a result, to the extent a Section 1983 failure to protect claim has been alleged against the City of Pocatello Defendants, it cannot stand. The City of Pocatello Defendants' Motion for Summary Judgment is granted in this respect.[12]

---

[12] In reality, this claim is more appropriately directed at the individuals and entities associated with Bannock County – other Defendants in this action. To this end, these

**MEMORANDUM DECISION AND ORDER - 14**

B.  **Defendants' Motion to Compel Discovery Responses (Docket No. 43)**

The facts relevant to Defendants' Motion to Compel Discovery Responses include the following:

- On October 15, 2014, Plaintiff files the Amended Complaint.

- On February 5, 2015, Defendants serve discovery requests upon Plaintiff.

- On April 2, 2015, Plaintiff responds to Defendants' discovery requests.

- On April 9. 2015, Defendants' counsel sent a letter to Plaintiff's counsel, outlining deficiencies with respect to Plaintiff's responses to Defendants' Interrogatory Nos. 1, 3, 8, 11, 13, 15, 15 and Defendants' Requests for Production of Documents.

- On May 20, 2015, Defendants' counsel sent a second letter to Plaintiff's counsel, reiterating the shortcomings with Plaintiff's discovery responses while also requesting dates for deposition.

- On June 23, 2015, Plaintiff's counsel sent a fax to Defendants' counsel, entitled "Supplement Discovery."

- On June 24, 2015, Defendants' counsel sent a third letter to Plaintiff's counsel, taking issue with Plaintiff's "Supplement Discovery." Therein, Defendants' counsel stated: "Pursuant to our discovery requests, you are required to indicate which discovery request these discovery documents might be responsive to. There is no indication in this supplement as to which interrogatory, request for production or request for admission that these documents might relate. In addition, it is unclear from the subject line as to whether these documents relate to the claims against the city of Pocatello or against Bannock County. You will not a separate discovery request was served by each entity."

- On July 17, 2015, Defendants filed the at-issue Motion to Compel.

- On July 20, 2015, Plaintiff's counsel sent a letter to Defendants' counsel, recalling that Defendants' counsel "wanted to get together and discuss what additional discovery is due," and asking if there was "[a]ny way we could get

---

Defendants have separately moved for summary judgment on this issue. *See* Defs.' MSJ (Docket No. 52).

**MEMORANDUM DECISION AND ORDER - 15**

> together on Monday so we can narrow down your request so I can promptly respond."

- On July 21, 2015, Defendants' counsel sent a fourth letter to Plaintiff's counsel, indicating that "we have provided you with a detailed description of the area in which we view your discovery responses to be deficient," and requesting "an appropriate response to discovery or provide us with a written description of why you believe that information we have requested is not discoverable."

- On August 4, 2015, Plaintiff's counsel sent a letter to Defendants' counsel, stating that he "will try to specify more clearly the responses or explain why it is not discoverable at this time," while also noting that Garth Van Orden (Mr. Van Orden's father) "has reviewed his answer to the deposition and has no changes," and that, following two depositions, Defendants "will have some of the additional discovery you have requested in your letter."

- On August 6, 2015, Defendants' counsel sent a fifth letter to Plaintiff's counsel, noting that Defendants have already outlined their objections to Plaintiff's discovery responses and that "[w]e do not feel as though it will be necessary or productive for us to meet in person and rehash the issues surrounding the deficiencies that we have already discussed with you in writing." Defendants' counsel went on to state: "Please simply provide us with complete written responses to discovery and produce all information requested. Once we have received a complete discovery response from your client, we can determine whether or not we will need to continue to pursue the Motion to Compel."

- On September 3, 2015, Plaintiff served Defendants with Plaintiff's "Amended Response to Bannock County Defendants' First Set of Interrogatories and Requests for Production to Plaintiff" ("Amended Responses").

- On October 19, 2015, Defendants submitted a "Supplemental Memorandum in Support of Motion to Compel Discovery Responses," arguing that Plaintiff's Amended Responses "are still deficient in several respects."

*See* Mem. in Supp. of MTC and Atts. (Docket No. 43, Atts. 1-7); *see also* Supp. Mem. in Supp. of MTC and Atts. (Docket No. 47 & Att. 1). From the Court's review of the record, Plaintiff has never formally responded to either the underlying Motion to Compel or the Supplemental Memorandum in Support of Motion to Compel Discovery Responses.

**MEMORANDUM DECISION AND ORDER - 16**

Preliminarily, Local Civil Rule 7.1(e)(1) provides that, "if any adverse party fails to timely file any response documents required to be filed under this rule, such failure may be deemed to constitute a consent to the sustaining of said pleading or the granting of said motion or other application." Dist. Idaho Loc. Civ. R. 7.1(e)(1); *compare with* Dist. Idaho Loc. Civ. R. 7.1(e)(2) (dealing with motions brought under FRCP 56 (*see supra*)). Because Plaintiff has not responded to the Motion to Compel, there is no obvious basis from which this Court can challenge and critique Defendants' arguments concerning Plaintiff's allegedly lacking discovery responses. With that in mind, and seeing nothing obviously problematic with respect to Defendants' arguments in that regard, Local Civil Rule 7.1(e)(1) augers in favor of granting Defendants' Motion to Compel.

However, FRCP 37(a)(1) requires a party moving to compel to certify that a good faith attempt to resolve the discovery dispute has been made before filing the motion. *See* Fed. R. Civ. P. 37(a)(1) ("The motion must include a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action."). Relatedly, according to Local Civil Rule 37.1 (in effect at the time of the parties' discovery dispute):

> To confer means to speak directly with opposing counsel or a self-represented litigant in person or by telephone, to identify and discuss disputed issues and to make a reasonable effort to resolve the disputed issues. The sending of an electronic or voice-mail communication does not satisfy the requirement to "confer."

Dist. Idaho Loc. Civ. R. 37.1. Defendants' counsel contends that his various letters to Plaintiff's counsel speaking to the alleged inadequacies with the latter's discovery responses satisfy the meet-and-confer requirement outlined within the Federal Rules of Civil Procedure and this District's Local Civil Rules. *See* Mem. in Supp. of MTC (Docket No. 43, Att. 1) (discussing

**MEMORANDUM DECISION AND ORDER - 17**

various "meet and confer" letters); *see also* Angell Aff. (Docket No. 43, Att. 2) (same); Supp. Mem. in Supp. of MTC (Docket No. 47) (same); Supp. Hall Aff. (Docket No. 47, Att. 1). The undersigned disagrees, referring Defendants' counsel to Local Civil Rule 37.1's above-stated language. *See supra*; *see also* Dist. Idaho Loc. Civ. R. 37.1 Adv. Comm. Notes ("This rule does not prevent or prohibit the use of written communication to resolve disputes. *However, if disputes are not resolved via written communication, counsel or self-represented litigants (except pro se prisoners) must attempt to confer in person or by telephone prior to a motion to compel being filed.*") (emphasis added).

All told, then, there are problems on both sides with respect to the merits of Defendants' Motion to Compel: Plaintiff has clearly been delinquent with his discovery responses while Defendants have not fully complied with the applicable rules when moving this Court for corresponding relief. Add to this the fact that, through this Memorandum Decision and Order, the City of Pocatello Defendants' Motion for Summary Judgment is granted, potentially changing the backdrop (at least to some extent) for the arguments raised within Defendants' Motion to Compel. Given this potential change in circumstances, coupled with the significant passage of time in the interim, the Court will deny the Motion to Compel, without prejudice to Defendants to renew any effort to compel responses to certain discovery requests that remain relevant moving forward. Before doing so, however, Defendants' counsel must comply with Local Civil Rule 37.1.

///

///

///

**MEMORANDUM DECISION AND ORDER - 18**

### III.  **ORDER**

Based on the foregoing, IT IS HEREBY ORDERED that:

1. Defendants' Motion for Summary Judgment (Docket No. 32) is GRANTED; and

2. Defendants' Motion to Compel Discovery Responses (Docket No. 43) is DENIED, without prejudice to Defendants to renew any effort to compel responses to certain discovery requests that remain relevant moving forward.



DATED: **March 27, 2016**

Honorable Ronald E. Bush
Chief U. S. Magistrate Judge

**MEMORANDUM DECISION AND ORDER - 19**