# UNITED STATES DISTRICT COURT
## DISTRICT OF IDAHO

JASON VANORDEN,

      Plaintiff,

vs.

BANNOCK COUNTY, SHERIFF'S
DEPARTMENT, CITY OF POCATELLO,
SHERIFF LOREN NIELSEN, CAPTAIN KEVIN
FONNESBECK, CAPTAIN ELLE PETERSON,
DEPUTY SHANNON BLOXHAM, DEPUTY
IFEREIMI TABAKECE, DEPUTY SHELTON,
DEPUTY JARROD PHILLIPS, DEPUTY HOFF,
DETECTIVE ALEX HAMILTON, DEPUTY
KATHLEEN BALLARD, SCOTT MARCHAND,
SERGEANT ERICK ANDERSON, OFFICER
MATT SHUTES, SERGEANT BILL COLLINS,
OFFICER TRAVIS EVANS, OFFICER DARREN
DANIELS, AND JOHN DOES 1-20,

      Defendants.

Case No.: 4:14-cv-00303-REB

**MEMORANDUM DECISION AND
ORDER RE:**

**DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT**

**(Docket No. 52)**

Now pending before the Court is Defendants'[1] Motion for Summary Judgment (Docket

No. 52).  Having carefully considered the record, participated in oral argument, and otherwise

being fully advised, the Court enters the following Memorandum Decision and Order:

---

[1] Moving Defendants include Bannock County, Sheriff's Department, Sheriff Loren
Nielsen, Captain Kevin Fonnesbeck, Captain Ellie Peterson, Deputy Shannon Bloxham, Deputy
Ifereimi Tabakece, Deputy Shelton, Deputy Jarrod Phillips, Deputy Hoff, Detective Alex
Amilton, and Deputy Kathleen Ballard.  *See* MSJ (Docket No. 52).  These Defendants refer to
themselves collectively as the "Bannock County Defendants" in their briefing.  *See* Mem. in
Supp. of MSJ, p. 2 (Docket No. 52, Att. 1).

**MEMORANDUM DECISION AND ORDER - 1**

## I. BACKGROUND

This case follows an August 15, 2013 stand-off between Jason Van Orden and officers from the City of Pocatello Police Department, followed by his arrest and transport to Portneuf Medical Center before being booked in the Bannock County Jail.  Two weeks later, on August 29, 2013, deputies at the Bannock County Jail found Mr. Van Orden dead in his cell – he had apparently taken his own life by hanging himself with bed linens.  At the time of his death, Mr. Van Orden was not on suicide watch.

Plaintiff's Amended Civil Rights Complaint raises claims against two different sets of defendants, identified and grouped according to their otherwise separate interaction with Mr. Van Orden at two different points in time.  The first group – the City of Pocatello Defendants – was sued in relation to Mr. Van Orden's August 15, 2013 arrest (Plaintiff's Section 1983 excessive force claim).  The second group – the Bannock County Defendants – was sued in relation to Mr. Van Orden's August 29, 2013 death in the Bannock County Jail (Plaintiff's Section 1983 failure to protect claim).[2]  This Court has already dismissed Plaintiff's claims against the City of Pocatello Defendants.  *See* 3/27/16 MDO (Docket No. 67).

As to the remaining Bannock County Defendants, Plaintiff generally alleges:

Because Defendants knew or should have known that Plaintiff was emotionally and mentally unstable and suicidal, Defendants owed a duty to Plaintiff to provide

---

[2]  These two claims are included within Count 1 of Plaintiff's Amended Civil Rights Complaint.  *See* Am. Compl., ¶¶ 15-20 (Docket No. 4).  At Count 2 of Plaintiff's Amended Civil Rights Complaint, Plaintiff also asserts a gross negligence claim.  *See id*. at ¶¶ 21-26.  However, at oral argument on the City of Pocatello Defendants' Motion for Summary Judgment, Plaintiff's counsel confirmed that the gross negligence claim and excessive force claim are one and the same.  *See* 3/27/16 MDO, p. 8, n.6 (Docket No. 67).  And, again, at oral argument on the Bannock County Defendants' Motion for Summary Judgment, Plaintiff's counsel confirmed for the record that no state law claims were being raised, only Section 1983 claims.

**MEMORANDUM DECISION AND ORDER - 2**

appropriate care to prevent Plaintiff from harming himself.  Indeed, Defendants
claim they had taken precaution; however, despite these claims, Plaintiff
accomplished his suicide unchecked and without detection by Defendants.

Because Defendants' actions at the time of the arrest and incarceration or lack of
action pursuant to the clear warnings of Plaintiff's instability, Plaintiff was denied
his constitutional right to life without due process of law, a protection afforded him
by the Constitution of the United States.

Am. Compl., ¶¶ 13-14 (Docket No. 4).

The Bannock County Defendants now move for summary judgment, arguing (1) that

Plaintiff (whether considered to be the decedent or his parents) does not have standing to pursue

any claims against the Bannock County Defendants;[3] (2) that there is no genuine issue of

material fact for trial on the failure to protect claim against the Bannock County Defendants; and

(3) that the Bannock County Defendants are entitled to qualified immunity.  *See generally* Mem.

in Supp. of MSJ (Docket No. 52, Att. 1).[4]

---

[3] This is a recurring argument and nettlesome issue for Plaintiff.  *See* 3/27/16 MDO, p. 2,
n.3 (Docket No. 67) ("There is some confusion as to who "Plaintiff" is in this matter.  For
example, this action's caption identifies Plaintiff as, simply, Jason Van Orden.  Yet, the
Amended Complaint itself begins by stating: 'Plaintiff, JASON VANORDEN by and through
personal representatives of the estate and parents of the deceased GARTH VANORDEN AND
JULIE VANORDEN ('Plaintiffs'), by and through the personal representatives of his estate and
undersigned counsel, hereby alleges and complains as follows.'  Ans, as to the 'jurisdiction'
allegations, the Amended Complaint states: '*Plaintiffs'* son, Jason Van Orden, at the time of the
incident, was a citizen of the State of Idaho [ ].'" (emphasis added in original) (internal citations
omitted).  Even so, because the Court finds that Plaintiff cannot prevail on the substantive merits
of the remaining claim, this Memorandum Decision and Order need not (and therefore does not)
address the Bannock County Defendants' standing arguments.

[4] At the close of oral argument, Plaintiff's counsel conceded that, as to certain individual
defendants within the group comprising the Bannock County Defendants, infirmities in the
nature of proof in the record warranted their dismissal.  In other words, according to Plaintiff's
counsel, only Plaintiff's Section 1983 failure to protect claim against Defendants Shannon
Bloxham and Ifereimi Tabakece should survive summary judgment.  With that understanding in
mind, this Memorandum Decision and Order focuses only upon Plaintiff's Section 1983 failure
to protect claim against these individuals.

**MEMORANDUM DECISION AND ORDER - 3**

## II.  DISCUSSION

### A.    Legal Standards

#### 1.    Summary Judgment

Summary judgment is appropriate where a party can show that, as to any claim or

defense, "there is no genuine dispute as to any material fact and the movant is entitled to

judgment as a matter of law."  Fed. R. Civ. P. 56(a).  One of the principal purposes of summary

judgment "is to isolate and dispose of factually unsupported claims . . . ."  *Celotex Corp. v.*

*Catrett*, 477 U.S. 317, 323-34 (1986).  It is "not a disfavored procedural shortcut," but is instead

the "principal tool[ ] by which factually insufficient claims or defenses [can] be isolated and

prevented from going to trial with the attendant unwarranted consumption of public and private

resources."  *Id*. at 327.  "[T]he mere existence of some alleged factual dispute between the

parties will not defeat an otherwise properly supported motion for summary judgment."

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).  There must be a genuine dispute

as to any *material* fact – a fact "that may affect the outcome of the case."  *Id*. at 248.

The evidence must be viewed in the light most favorable to the non-moving party, and

the Court must not make credibility findings.  *Id*. at 255.  Direct testimony of the non-movant

must be believed, however implausible.  *Leslie v. Grupo ICA*, 198 F.3d 1152, 1159 (9th Cir.

1999).  On the other hand, the Court is not required to adopt unreasonable inferences from

circumstantial evidence.  *See McLaughlin v. Liu*, 849 F.2d 1205, 1208 (9th Cir. 1988).

The moving party bears the initial burden of demonstrating the absence of a genuine

dispute as to a material fact.  *See Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) (en

banc).  To carry this burden, the moving party need not introduce any affirmative evidence (such

**MEMORANDUM DECISION AND ORDER - 4**

as affidavits or deposition excerpts) but may simply point out the absence of evidence to support

the nonmoving party's case.  *See Fairbank v. Wunderman Cato Johnson*, 212 F.3d 528, 532 (9th

Cir. 2000).

This shifts the burden to the non-moving party to produce evidence sufficient to support a

jury verdict in his favor.  *See Devereaux*, 263 F.3d at 1076.  The non-moving party must go

beyond the pleadings and show "by her [ ] affidavits, or by the depositions, answers to

interrogatories, or admissions on file" that a genuine dispute of material fact exists.  *Celotex*, 477

U.S. at 324.

2.       Section 1983, Failure to Protect, and Deliberate Indifference

"Section 1983 does not create any substantive rights, but is instead a vehicle by which

plaintiffs can bring federal constitutional and statutory challenges to actions by state and local

officials." *Anderson v. Warner*, 451 F.3d 1063, 1067 (9th Cir. 2006) (citing *Cholla Ready Mix,

Inc. v. Civish*, 382 F.3d 969, 978 (9th Cir. 2004)).  "The purpose of [Section] 1983 is to deter

state actors from using the badge of their authority to deprive individuals of their federally

guaranteed rights." *Id*. (citation omitted).  To state a valid claim under Section 1983, a plaintiff

must allege a violation of rights protected by the Constitution or created by federal statute

proximately caused by the conduct of a person acting under color of state law.  *See Crumpton v.

Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991).

Plaintiff alleges an Eighth Amendment violation based on a failure to prevent harm.  "A

prison official's deliberate indifference to a substantial risk of serious harm to an inmate violates

the Eighth Amendment." *Farmer v. Brennan*, 511 U.S. 825, 828 (1970) (internal quotation

marks omitted).  To prevail on such an Eighth Amendment claim, the plaintiff must satisfy three

**MEMORANDUM DECISION AND ORDER - 5**

requirements which include both objective and subjective components.  First, the plaintiff must

show that he is incarcerated under conditions where the prison official could infer a substantial

risk of harm – this is the "objective" element of the test.  *See id.* at 834-37.  Second, the plaintiff

must show that the prison official actually made that inference – this is the "subjective" element

of the test.  *See id.* at 837; *see also Gibson v. County of Washoe, Nev.*, 290 F.3d 1175, 1188 (9th

Cir. 2002) ("If a [prison official] should have been aware of the risk, but was not, then the

[prison official] has not violated the Eighth Amendment, no matter how severe the risk.").

Third, the plaintiff must show that the prison official was deliberately indifferent to a substantial

risk of serious harm, i.e., the prison official must have known of and disregarded an excessive

risk to the prisoner's safety.  *See Farmer*, 511 U.S. at 837.  Mere negligent failure to protect an

inmate from harm is not actionable under Section 1983.  *See id.* at 835.

**B.**    **The Bannock County Defendants are Entitled to Summary Judgment**

Though not detailed within the Amended Civil Rights Complaint, Plaintiff's claims

against Defendants Bloxham and Ifereimi have evolved to reflect a criticism of their conduct in

the moments leading up to, and immediately following, Mr. Van Orden's suicide – namely that,

(1) during each of their security walk-throughs, neither bothered to move/remove the roll/piece

of toilet paper which obscured a full view into Mr. Van Orden's cell; and (2) the noose knife

could not be located and utilized once they learned that Mr. Van Orden had hung himself.  *See,*

*e.g.*, Opp. to MSJ, pp. 5-11 (Docket Nos. 53 & 53, Att. 1).  In this respect, Plaintiff's claims are

premised upon alleged violations of Bannock County Jail policy by Defendants Bloxham and

Ifereimi, arguing:

> There are several genuine issues of fact against these several defendants.  *One being*
> *as to whether or not Jason Van Orden would be deceased had the several defendants*
> *adequately enforced the rules and policies of the jail.  This would have been done by*
> *not allowing Mr. Van Orden to be naked or partially naked in his cell, masturbate*

**MEMORANDUM DECISION AND ORDER - 6**

*in his cell, not allow Mr. Van Orden to obscure the view of his cell window, and by viewing the entire cell to make sure Mr. Van Orden was not tearing up his bedding to make a noose to kill himself with.* This is further supported by the deposition testimony of Ifereimi Tabakece where he admitted, among other things that part of his job was to keep the inmates safe and warn the inmates of violations. *He also admitted to directly violating jail policy with regard to not waiting to make sure Mr. Van Orden had complied with his commands regarding jail policy violations.*

While not nearly as overt in her constitutional violations of Mr. Van Orden, Shannon Bloxham's deposition testimony also gives rise to constitutional concerns. Corporal Bloxham characterized her duties at the jail as "adult babysitting." She testified that her job was only to make sure the inmates were "breathing" or "alive." She was trained on mental health issues and what to look for in those who were possibly suffering from mental illness and suicide ideation. She testified that there were several attempted suicides while she worked for the Bannock County Sheriff's Office. She testified that there was a specific piece of potentially lifesaving equipment which could have been used in Mr. Van Orden's suicide, but the "noose knife" was missing from the officer's station where it was supposed to be kept. When pressed as to where the lifesaving piece of equipment was supposed to be located, she testified that it moved, depending on who touched it last. She testified that it was eventually found but couldn't tell how long it took to find or where it was eventually found. This is in contrast to Deputy Tabakece's deposition testimony that he knew where the knife was every time he worked a shift. *The knife was supposed to be located on the medical box in the officer's station and he could not explain why he either did not check for it when he came on duty, or where it went during Mr. Van Orden's suicide. Both Deputy Tabakece and Corporal Bloxham referred to the instrument used to cut down hanging victims as a "noose knife." By its very name it has but one function, to cut down a potential suicide victim who is hanging themself, yet it could not be found during the one event it was specifically designed for.* . . . .

*While Deputy Tabakece testified that it was a violation of jail policy to put any obstruction on the window to the jail cells, Corporal Bloxham testified that it was more of a respect issue.* That inmates covered the window when they went to the bathroom. If Corporal Bloxham's testimony is to be believed, Jason Van Orden wasn't using the bathroom when he was engaged by Corporal Bloxham or Deputy Tabakece, *so why did they allow the toilet paper to remain and obscure the view of the cell in violation of Jail policy?*

*Id.* at pp. 5-7 (Docket Nos. 53 & 53, Att. 1) (internal citations omitted) (emphasis added).

However, even if Mr. Van Orden was able to commit suicide due to Defendant

Tabakece's and Defendant Bloxham's failure to "adequately enforce[ ] the rules and policies of

**MEMORANDUM DECISION AND ORDER - 7**

the jail," this is not enough.  Such allegations, even if construed most favorably on this record in

favor of Plaintiff,  amount only to claims of negligence.  They do not rise to the level of proof of

a deliberate indifference of a substantial risk of harm needed to support a Section 1983 failure to

protect claim.  *See Cabrera v. Clark County Detention Center*, 2016 WL 1449581, \*8 (D. Nev.

2016) ("Even if this could be construed as a violation of NaphCare's policy (which states that

inmates with non-urgent sick call requests must be 'seen' the next business day), this is at best

evidence of negligence, which is not enough to establish a deliberate indifference claim.") (citing

*Toguchi v. Chung*, 391 F.3d 1051, 1057 (9th Cir. 2004) ("Mere negligence in diagnosing or

treating a medical condition, without more, does not violate a prisoner's Eighth Amendment

rights.")); *see also Calton v. Livingston*, 2011 WL 2118700, \*12 (S.D. Tex. 2011) ("To the

extent that Calton claims that the defendants violated prison policy, it is well established that an

officer's failure to follow prison rules, standing alone, does not warrant relief under 42 U.S.C.

§ 1983.").  To be clear, proving deliberate indifference in this setting requires *more* than a

showing of negligence.  Instead, Plaintiff must establish (or, at this stage of the litigation, raise a

genuine dispute as to a material fact) that Defendants Tabakece and Bloxham failed to take

measures to prevent Mr. Van Orden from committing suicide, despite knowing of a substantial

risk that Mr. Van Orden would, in fact, commit suicide.  On this lynchpin point, the evidence is

lacking.

  Plaintiff's evidence is bare of anything to suggest that Defendants Tabakece and

Bloxham were aware of *any* risk that Mr. Van Orden might commit suicide that evening.  To the

contrary, the evidence suggests just the opposite – that is, from the time Mr. Van Orden was seen

at Portneuf Medical Center following his stand-off with the City of Pocatello police, to the time

**MEMORANDUM DECISION AND ORDER - 8**

he committed suicide at the Bannock County jail, there was no indication that he might attempt

to kill himself.  For example:

- At Portneuf Medical Center, (1) Dr. John Conner, M.D. reviewed all systems and found that Mr. Van Orden had "no previous psychiatric history"; (2) Mr. Van Orden "denie[d] mental status changes"; (3) Dr. Conner did not find any suicidal or other concerning tendencies; and (4) Dr. Conner found that Mr. Van Orden was "medically cleared for non-medical unit" at the Bannock County Jail.  *See* SOF NO. 2 (Docket No. 52, Att. 2) (citing Peterson Aff., ¶ 5 (Docket No. 52, Att. 6)).  The medical records from Portneuf Medical Center were provided to the Bannock County Jail, and maintained as part of the jail's regular business records.  *See id*; *see also* Ex. A to Peterson Aff. (Docket No. 52, Att. 6).

- At the Bannock County Jail, Mr. Van Orden was given the "Bannock County Sheriff's Office PREA Inmate Assessment" during booking.  *See* SOF No. 3 (Docket No. 52, Att. 2) (citing Peterson Aff., ¶ 6 (Docket No. 52, Att. 6)); *see also* Ex. B to Peterson Aff. (Docket No. 52, Att. 7).  During that assessment:

  - Mr. Van Orden was asked: "Are you currently having any thoughts of suicide or have any suicidal history?"  Mr. Van Orden responded: "No."  *See id*.

  - Mr. Van Orden was asked: "Have you ever thought about committing suicide?"  Mr. Van Orden responded: "No."  *See id*.[5]

  - Mr. Van Orden was asked: "Are you currently thinking about suicide?"  Mr. Van Orden responded: "No."  *See id*.

  - Mr. Van Orden was asked: "Has anyone in your immediate family committed or attempted suicide?"  Mr. Van Orden responded: "No."  *See id*.

  - Mr. Van Orden was asked: "Are you in need of special care of any kind?"  Mr. Van Orden responded: "No."  *See id*.

- Shortly after booking at the Bannock County Jail, Mr. Van Orden was provided with a "Health Assessment" by Correctional Healthcare Companies

---

[5]  In reality, Mr. Van Orden had previously attempted to commit suicide.  *See* SOF No. 9 (Docket No. 52, Att. 2).  However, this was never made known to personnel at the Bannock County Jail.  *See id*.

**MEMORANDUM DECISION AND ORDER - 9**

("CHM"), an independently contracted medical provider for the Bannock County Jail. *See* SOF No. 4 (Docket No. 52, Att. 2) (citing Peterson Aff., ¶ 7 (Docket No. 52, Att. 6)); *see also* Ex. D to Peterson Aff. (Docket No. 52, Att. 8). Therein, the nurse did not see any indicator or chart any concern that would necessitate a "suicide watch." *See id.*

- Because Mr. Van Orden admitted to being under the influence of methamphetamine, it was determined that he would be placed on "closed custody" ("CC") watch for two days. *See* SOF No. 5 (Docket No. 52, Att. 2) (citing Peterson Aff., ¶ 8 (Docket No. 52, Att. 6)). At 11:40 a.m. on August 15, 2013, Mr. Van Orden was placed under CC and the nurse noted that he stated that he was "not suicidal." *See id.*; *see also* Ex. C to Peterson Aff. (Docket No. 52, Att. 8). Members of the CHM "medical staff" are the only individuals that can make a decision to move an inmate from CC to the general population. *See* Peterson Aff., ¶ 8 (Docket no. 52, Att. 6).

- Mr. Van Orden was checked and charted for every fifteen minutes of the next two days. *See* SOF No. 6 (Docket No. 52, Att. 2) (citing Peterson Aff., ¶ 9 (Docket No. 52, Att. 6)). At the end of the two days, the nurse charted: "Pt. Alert & responsive, oriented x4"; that he was "pleasant and cooperative"; that he "denies n/v/d"; and that he was "ok to be housed and released from CC." *Id.*; *see also* Ex. C to Peterson Aff. (Docket No. 52, Att. 8).

- The on-duty nurse for CHM determined that Mr. Van Orden was not a suicide threat, and released him to be housed in the general population. *See* SOF No. 6 (Docket no. 52, Att. 2). Mr. Van Orden was housed in C-POD, in Cell No. 8. *See id.* at SOF No. 8.

- Deputies made regular security checks in C-POD during the afternoon and evening of August 29, 2013. *See* SOF NO. 11 (Docket No. 52, Att. 2).

- On August 29, 2013, the jail sensor logs for C-POD indicate that checks were conducted near Mr. Van Orden's Cell No. 8 at the following times:

    - 5:59 p.m. (by Defendant Tabakece)
    - 6:13 p.m. (by Defendant Bloxham)
    - 6:50 p.m. (by Defendant Tabakece)
    - 7:23 p.m. (by Defendant Tabakece)
    - 7:52 p.m. (by Defendant Bloxham)
    - 8:13 p.m. (by Defendant Tabakece)
    - 8:52 p.m. (by Defendant Bloxham)
    - 9:12 p.m. (by Defendant Tabakece)
    - 10:00 p.m. (by Defendant Bloxham)
    - 10:51 p.m. (by Defendant Bloxham)

**MEMORANDUM DECISION AND ORDER - 10**

*See* SOF No. 12 (Docket No. 52, Att. 2) (citing Bloxham Aff., ¶ 5 (Docket No. 52, Att. 4)).

- During the 8:52 p.m. walk-through, Defendant Bloxham stopped at Cell No. 8 and saw that toilet paper partially obscured the window. *See* SOF No. 13 (Docket No. 52, Att. 2) (citing Bloxham Aff., ¶ 6 (Docket No. 52, Att. 4)). However, around the edge of the toilet paper she could see Mr. Van Orden sitting on the edge of his bed. *See id.* Defendant Bloxham asked Mr. Van Orden if "he was okay or if he needed anything." *Id.* Mr. Van Orden said he was fine and Defendant Bloxham said: "Okay, have a good night." *Id.*[6]

- In Defendant Tabakece's walk-through at 9:12 p.m. he was able to observe Mr. Van Orden in his cell through the cell door's window. *See* SOF No. 14 (Docket No. 52, Att. 2) (citing Tabakece Aff., ¶ 5 (Docket No. 52, Att. 3)). Defendant Tabakece observed that Mr. Van Orden was naked and that he was both walking around the cell and then sitting on the bed. *See id.* Defendant Tabakece then saw Mr. Van Orden touching his penis and masturbating at which time Defendant Tabakece kicked the door and told Mr. Van Orden to "knock it off." *See id.*[7]

- Approximately 18 minutes later, another inmate discovered Mr. Van Orden hanging by a bed sheet from the bunk in his cell and alerted Defendant Tabakece who immediately issued a medical back-up call and responded to Cell No. 8. *See* SOF No. 16 (Docket No. 52, Att. 2) (citing Tabakece Aff., ¶ 7 (Docket No. 52, Att. 3)).

From these undisputed facts, it cannot be said that Defendants Tabakece and Bloxham

were ever on notice that Mr. Van Orden represented a suicide risk.[8] Had they been on such

---

[6] Defendant Bloxham said inmates occasionally place toilet paper to obscure the window for privacy to use the bathroom. *See* SOF No. 13 (Docket No. 52, Att. 2) (citing Bloxham Aff., ¶ 6 (Docket No. 52, Att. 4)). According to Bloxham, if the deputies still have visibility into the cell around the edge of the toilet paper, they do not require the paper to be removed. *See id.*

[7] Defendant Tabakece acknowledges that it is a violation of jail rules for an inmate to masturbate, and that jail deputies have the discretion to give a warning to an inmate before writing them up for a violation. *See* SOF No. 15 (Docket No. 52, Att. 2) (citing Tabakece Aff., ¶ 6 (Docket No. 52, Att. 3)). In this case, Defendant Tabakece gave Mr. Van Orden a verbal warning to stop masturbating. *See id.*

[8] Plaintiff argues that Defendants Tabakece and Bloxham had general knowledge of other suicide attempts at the Bannock County Jail in the past. *See* Opp. to MSJ, p. 8 (Docket No. 53, Att. 1). But this type of general knowledge is not the same as a subjective understanding that *Mr. Van Orden at that time and place* might commit suicide. Absent this more focused subjective element, there can be no deliberate indifference.

**MEMORANDUM DECISION AND ORDER - 11**

notice, (and did nothing in the face of such knowledge – or, even, violated jail policy in the ways

Plaintiff contends here), then summary judgment would not be appropriate. But that is not the

record of this case. Even if Defendants Tabakece and Bloxham could have taken different

actions in the moments leading up to Mr. Van Orden's death, such possibilities do not change the

fact that they were never aware of a substantial risk that Mr. Van Order would hang himself.

Though perhaps negligent, without the subjective awareness of this risk of harm to Mr. Van

Orden, Plaintiff's Section 1983 failure to protect claim cannot stand.[9] Mr. Van Orden's death is

a tragedy, to be sure; but it is not actionable as against Defendants Tabakece and Bloxham. The

Bannock County Defendants' Motion for Summary Judgment is granted.

## III. ORDER

Based on the foregoing, IT IS HEREBY ORDERED that Defendants' Motion for

Summary Judgment (Docket No. 52) is GRANTED.



DATED: **August 24, 2016**

Honorable Ronald E. Bush
Chief U. S. Magistrate Judge

---

[9] Plaintiff's allegations surrounding the misplacement of the noose knife also speak to a negligence claim, not a Section 1983 claim. While arguably shameful if true, any argument in this respect does not inform the integral issue of Defendant Tabakece's and Defendant Bloxham's subjective knowledge of any substantial risk of harm preceding Mr. Van Orden's death.

**MEMORANDUM DECISION AND ORDER - 12**